## H.A. Thomson Co. v. MGI Properties

*Stephen R. Harris,* for plaintiff.
*Mark L. Tunnell,* for defendant.

SMITH, *J.,* March 3, 1992—This is a case where an insurance broker failed to remit a portion of insurance premiums paid to him by the insured. He failed to forward over $35,000 to the exclusive agent of the insurance carrier, which actually amounted to most of the agent's commission. The issue in the case is whether the insured or the agent of the carrier is liable for the missing money. We find that the agent must bear the loss for the money. As such, we make the following

## FINDINGS OF FACT

(1) H.A. Thomson Company, plaintiff, is an insurance agency with its principal place of business in Exton, Pennsylvania.

(2) MGI Properties, defendant, is a Massachusetts trust organized under the laws of the Commonwealth of Massachusetts, with its principal place of business in Boston, Massachusetts.

(3) MGI owns and manages numerous parcels of real estate across the country for the benefit of its in-

vestors and requires insurance policies to cover various risks arising out of such ownership.

(4) Such insurance was obtained for MGI through the offices of Bruce Weitzberg Insurance, of Forest Hills, New York, which acted as MGI's broker.

(5) For some years prior to the policy year November 26, 1988, through November 26, 1989, Weitzberg procured insurance for MGI from Northbrook Insurance Company through an agency in Tampa, Florida, Crowder Insurance Inc.

(6) That changed after MGI received the letter of September 22, 1988, from Crowder, which explained how on October 1, 1986, Crowder would be purchased by ABI Management Inc.

(7) Also on September 22, 1988, MGI's broker, Bruce Weitzberg Insurance, sent a letter advising MGI how to acquire a new agent, namely H.A. Thomson.

(8) MGI duly complied by preparing and mailing its letter of appointment dated October 19, 1988, to H.A. Thomson.

(9) During September and October 1988, Weitzberg was instrumental in presenting the MGI insurance account to H.A. Thomson, and among other things, Weitzberg provided a schedule of properties and rating information for the renewal term November 26, 1988, to November 25, 1989.

(10) Weitzberg's information eventually became the basis of five new policies, the premiums for which are the cause of this action.

(11) Most correspondence, and most property and insurance information between the parties hereto for the renewal term November 26, 1988, to November 25, 1989, was directed to, and went through the offices of Bruce Weitzberg Insurance.

(12) The policies required by MGI for the renewal year 1988-1989 were issued by Northbrook Insurance Company, through its agent H.A. Thomson Co.

(13) H.A. Thomson at all times acted within the scope of its authority from Northbrook Insurance Co. for the purposes of this action as agent for Northbrook Insurance Co.

(14) Bruce Weitzberg Insurance at all times acted as broker for MGI. Bruce Weitzberg Insurance did at no time have an agent contract with Northbrook Insurance Co. Weitzberg and H.A. Thomson agreed orally to split the commission on the policies on a 50/50 basis.

(15) All certificates of insurance were sent by H.A. Thomson, as agent for Northbrook, to Bruce Weitzberg Insurance for delivery to MGI.

(16) Due to the nature of MGI's business during the renewal term, as properties were bought and sold, amended certificates of insurance were sent in the same fashion.

(17) Subsequently, when the policies themselves were issued, H.A. Thomson sent them to Bruce Weitzberg Insurance for delivery to MGI.

(18) Bruce Weitzberg Insurance invoiced MGI for these said policies as follows:

| | |
|---|---|
| November 7, 1988 | $ 87,052 |
| December 20, 1989 | $ 119,450 |
| January 12, 1989 | $ 22,706 |
| April 17, 1989 | $ 9,986 |
| | $ 239,194 |

(19) MGI paid those invoices by remitting the indicated sums to Bruce Weitzberg Insurance.

(20) From January 1989 through August 1989 through August 1989, H.A. Thomson and Bruce Weitzberg Insurance continued to contact one another, issuing binders and obtaining amendments for MGI as the need arose.

(21) On or about August 1, 1989, MGI learned that all its policies were canceled for non-payment of premiums. Bruce Weitzberg Insurance, however, characterized these cancellations as "inadvertent" and procured what he professed were reinstatement notices. Weitzberg had no direct authority to procure reinstatement of the MGI policies and would have had to have gone through H.A. Thomson to obtain reinstatement. In fact, H.A. Thomson obtained reinstatement.

(22) Bruce Weitzberg Insurance remitted a check to H.A. Thomson in mid-August 1989 which bounced. Subsequently, Bruce Weitzberg Insurance went out of business and/or filed for bankruptcy protection.

(23) New notices of cancellation were sent to MGI.

(24) On September 1, 1989, H.A. Thomson sent directions to MGI in order to reinstate coverage, pursuant to which MGI remitted an additional $62,724.19 directly to H.A. Thomson. H.A. Thomson was able to obtain reinstatement of MGI's policies.

(25) On November 10, 1989, MGI sent an additional $26,355.64 to H.A. Thomson.

(26) The total amount thus remitted by MGI for the renewal period November 1988 to November 1989 is $327,823.83.

(27) The gross premium due for the year in question was $334,608.

(28) The total amount paid by Weitzberg to H.A. Thomson was $209,708.75.

(29) The total amount paid by MGI to H.A. Thomson was $88,629.83.

(30) MGI is entitled to a credit in the amount of $1,021 due to the sale during the policy term of the Centennial property.

(31) The total commission earned by H.A. Thomson was $41,168.55, approximately 12.3 percent of the gross premium of $334,608.

(32) The total amount received by H.A. Thomson was $298,338.58. The total amount paid by H.A. Thomson to Northbrook was $292,418.45.

(33) The difference between the gross premium of $334,608 and the total amount received by H.A. Thomson from Weitzberg and MGI ($298.338.58), minus the credit due MGI, ($1,021) is $35,248.42.

(34) MGI had full and complete coverage for the policy period of November 26, 1988, through November 26, 1989, without lapse.

(35) H.A. Thomson had no relationship with Bruce Weitzberg or Bruce Weitzberg Insurance until September 1988, at the time Weitzberg contacted H.A. Thomson in connection with the insurance policies which are the subject of this action.

## DISCUSSION

According to 31 Pa. Code §31.13(C):

"When a company gives a policy to a broker for delivery to the insured, such broker shall become an agent of the company for delivery of that one policy and, since collection of the premium is implied, payment to the broker shall be payment to the company."

And, since an agent acts on behalf of the principle,[*] this same rule applies if the insurance company gives its policy to its agent who then sends it to a broker for delivery to the insured.

In the instant case, the policy was sent from carrier to insured in the same manner as stated in 31 Pa. Code §31.13(C). The carrier, Northbrook Insurance Company, sent its policy covering defendant's properties to its agent, H.A. Thomson, who sent the policy to a broker, Bruce Weitzberg Insurance. That broker then delivered the policy to defendant, MGI Properties. In turn, defendant paid premiums to its broker, who was supposed to forward the money to H.A. Thomson. As a result, payment to the broker is good payment to the agent and the insurance carrier regardless of the fact that the broker failed to remit some of the money. Therefore, H.A. Thomson must absorb the loss of its commission and is unable to collect any money from MGI.

## CONCLUSIONS OF LAW

(1) The court has jurisdiction over the subject matter and the parties in this case.

(2) Since Northbrook Insurance Company sent its policy through its agent, H.A. Thomson, who forwarded it to the broker, Bruce Weitzberg, who in turn sent the policy to the insured, MGI Properties, payment by the insured to the broker is good payment to the agent and the carrier.

---

[*] See Restatement (Second) of Agency §1; *Scott v. Purcell,* 490 Pa. 109, 415 A.2d 56 (1980).

Accordingly, we enter the following

ORDER

And now, March 3, 1992, it is hereby ordered and decreed that defendant properly paid all of the insurance premiums and owes no money to plaintiff.